IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 23-cv-02155-LTB

E.R.D.,

        Plaintiff,

v.

MARTIN O'MALLEY1, Commissioner of the Social Security Administration,

        Defendant.

ORDER

Plaintiff, E.R.D., appeals from the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act 42 U.S.C. §401, *et. seq.,* and her application for supplemental security income ("SSI"), filed pursuant to Title XVI of the Social Security Act 42 U.S.C. §1381, *et. seq.* Jurisdiction is proper under 42 U.S.C. §405(g) and §1383(c)(3). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's decision as follows.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her

---

1 Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. §405(g).

DIB and SSI applications filed in 2019. [Administrative Record at Doc #9 "AR" 307-12] After Plaintiff's applications were initially denied [AR 88-91], and again denied upon reconsideration [AR 124-27], an Administrative Law Judge ("ALJ") held an evidentiary hearing [AR 40-87], and thereafter issued a written ruling in May of 2021. [AR 12-39] The ALJ denied Plaintiff's applications because he determined that Plaintiff could perform her past relevant work and, thus, she was not disabled. [AR 12-39]

On appeal, the District Court granted an unopposed motion for remand for further consideration of the medical opinions of record and for additional vocational expert testimony, if necessary, to clarify the effect of the assessed limitations on the occupational base. [AR 913, 1057-68] The same ALJ held a second evidentiary hearing on March 27, 2023. [AR 945-1000] On April 27, 2023, the ALJ again denied Plaintiff's applications on the basis that Plaintiff was capable of performing her past relevant work or, in the alternative, she was capable of performing other work existing in significant numbers in the national economy. [AR 912-36] This order became the SSA Commissioner's final decision when the Appeals Council did not assume jurisdiction.

Plaintiff timely filed her complaint with this court seeking review of the Commissioner's final decision on August 23, 2023. [Doc #1]

## II. ALJ's DECISION

In the final decision, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §404.1520(a) and §416.920(a). At step one, the ALJ found that

Plaintiff had not engaged in substantial gainful activity after her June 30, 2017 onset date (when she stopped working as a cashier at Walmart). [AR 66, 410, 916, 972] At step two, the ALJ found that Plaintiff had the severe impairments of: Psychogenic Non-Epileptic Seizures; Migraines; Osteoarthritis of the Hips; Depressive Disorder; Dysthymic Disorder; and Anxiety Disorder. [AR 916] The ALJ further found that Plaintiff had the physical impairments of Neuropathy, Cubital Tunnel Syndrome, and Obesity, but found those impairments were not severe. [AR 916-17] The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment at step three. [AR 917-20]

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §404.1567(b) and §416.967(b), in that she could only occasionally lift and carry 20 pounds and 10 pounds frequently, she could sit for approximately 6 hours in an 8-hour day, and she could stand and/or walk for approximately 6 hours in an 8-hour day. [AR 920] She was further limited in that she:

> can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She can occasionally balance as part of her job requirement. She can occasionally stoop, crouch, kneel and crawl. She can have only occasional exposure to excessive vibrations. She can never work around unprotected heights or moving and/or dangerous machinery. She can tolerate moderate levels of noise. She must avoid bright lights, meaning lights in excess of retail and office-type lighting. She must avoid flashing lights. She must be permitted to wear sunglasses during working hours. She is capable of performing work of limited complexity requiring accuracy and attention to

detail. She can maintain concentration, persistence and pace for 2-hour segments during a normal workday with normal breaks in work that is of limited complexity requiring accuracy and attention to detail. [AR 920]

At step four, based on this assessed RFC, the ALJ found Plaintiff was capable of performing her past relevant semi-skilled (SVP 3) work as a cashier. [AR 933] Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and assessed RFC, she could perform the semi-skilled (SVP 3) job of general salesperson, and that such job existed in significant numbers in the national economy. [AR 935] As a result, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act at step four and, alternatively, at step five of the sequential process, from her alleged onset date of June 30, 2017, through April 27, 2023, the date of the ALJ's decision. [AR 935-36]

## III. STANDARD OF REVIEW

In Social Security appeals, this Court reviews the ALJ's decision to determine whether the factual findings were supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Levan v. Berryhill*, No. 18-CV-02340-NRN, 2019 WL 2336852 (D. Colo. 2019) (unpublished) (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007)); *see also Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Kidd v. Comm'r, SSA*, No. 21-1363, 2022 WL 3041097 (10th Cir. Aug. 2, 2022) (unpublished) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084

4

(10th Cir. 2007)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue, supra*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Additionally, "[t]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Kidd v. Comm'r, supra* (quoting *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Therefore, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

As a result, reviewing courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue, supra,* 489 F.3d at 1084; *see also Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).

## IV. ANALYSIS

On appeal, Plaintiff asserts that the ALJ erred when: 1) finding her cubital tunnel syndrome and neuropathy were not severe impairments at step two; 2) failing to include (or specifically address and reject) the mental limitations assessed

5

at step two and step three when subsequently formulating her RFC; and 3) failing to include (or specifically reject) in her RFC specific limitations assessed by two medical opinions that the ALJ found otherwise persuasive.

### A. Severity Determinations at Step Two

I first address Plaintiff's claim that the ALJ erred when finding that neither her neuropathy nor her cubital tunnel syndrome were severe physical impairments at step two of the sequential process. The Commissioner argues, in response, that the ALJ's determination that these physical impairments were not severe was supported by substantial evidence, and that any error is harmless because other impairments were deemed severe and, as such, the ALJ proceeded to the next step of the sequential evaluation.

The ALJ determined that during a neurological consultative evaluation on July 23, 2020, Plaintiff was diagnosed with neuropathy. [AR 916] The ALJ further found that the neuropathy diagnosis:

> appears to be related to decreased sensation to pinprick in the right foot. However, [Plaintiff] consistently followed with a neurologist and primary care provider throughout the relevant period and did not complain of decreased sensation in the lower extremities. Neurological examinations with her treatment providers were also consistently normal, including intact sensation and normal gait. She was not diagnosed with neuropathy by any treatment provider. She testified that she had shooting pain in her arms, secondary to a nerve in her elbows, but there is no indication that these complaints were attributed to neuropathy in treatment records. [AR 916]

As to Plaintiff's cubital tunnel syndrome diagnosis, the ALJ found that:

> [h]er primary care provider did note a diagnosis of cubital tunnel syndrome on April 19, 2018, but there are no corresponding physical examination findings or complaints related to her upper extremities. She was advised to

6

>treat discomfort with ibuprofen, but she declined a referral to neurosurgery. [AR 916]

In addition, the ALJ noted that there was no EMG in the record evidence to confirm either diagnosis, and concluded that "[t]he objective evidence fails to demonstrate significant limitations in functioning resulting from neuropathy or cubital tunnel syndrome and as such they are found to be non-severe impairments." [AR 916] Based on the forgoing, I agree with the SSA Commissioner that the ALJ's severity findings related to Plaintiff's neuropathy and cubital tunnel syndrome are supported by substantial evidence in the record as set forth in the ALJ's order.

Plaintiff argues that she has met a *de minimus* showing that her impairments (or a combination of impairments) significantly limit her ability to do basic work activities at step two. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (indicating that "[i]f the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three); *see also* 20 C.F.R. §404.1522(a), §416.922(a). However, any error in the ALJ's determination of severity at step two does not affect the ALJ's sequential evaluation process because he found that Plaintiff suffered from other severe impairments, and then considered all her impairments (both severe and non-severe) when subsequently assessing her RFC. [AR 916, 933] As a result, any failure by the ALJ in finding that Plaintiff's neuropathy or cubital tunnel syndrome were not severe does not constitute error justifying remand. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (ruling that "the failure to find a particular impairment

7

severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe"); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (indicating that "any error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

### B. Failure to Address Previously-Determined Mental Limitations in RFC

Plaintiff also asserts that the ALJ erred by not including (or failing to address why they were not included) the mental limitations he assessed during his severity evaluation at steps two and three, when subsequently formulating Plaintiff's RFC. The Commissioner argues, in response, that there is no direct correspondence between the mental limitations used to determine severity at steps two and three with the RFC and, thus, there was no legal error to the extent the ALJ failed to specifically address those limitations when assessing Plaintiff's RFC. The Commissioner further argues that the record reveals that the ALJ's consideration of Plaintiff's mental impairments and the resulting limitations on her RFC was supported by substantial evidence.

When assessing the severity of claimant's mental impairments at step two and three of the sequential process, the ALJ is required to apply the SSA's psychiatric review technique ("PRT") by rating the claimant's degree of functional limitation in four broad areas. 20 C.F.R. §404.1520a, §416.920a. Those four broad areas are the claimant's ability: 1) to understand, remember or apply information; 2) to interact with others; 3) to concentrate, persist, or maintain pace; and 4) to

8

adapt or manage oneself. *Id.* If the claimant suffers one "extreme" limitation or two "marked" limitations in the broad areas of functioning, the "paragraph B" criteria are satisfied, and the claimant's mental impairments are deemed to have met or equaled the severity of a listed impairment at step three. *See Wilson v. Astrue*, 602 F.3d 1136, 1141 (10th Cir. 2010) (quoting *Carpenter v. Astrue*, *supra*, 537 F.3d at 1268.

      Here, the ALJ applied the PRT and found that Plaintiff was mildly limited (defined as having *slight limitation* in the ability to function independently, appropriately, effectively, and on a sustained basis, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00(F)(2)(b)) in the three broad functional areas of: understanding remembering or applying information; interacting with others; and adapting or managing oneself. [AR 919] The ALJ further found that Plaintiff was moderately limited (defined as having the *fair ability* to function independently, appropriately, effectively, and on a sustained basis, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00(F)(2)(c)) in the broad functional area of concentrating, persisting, or maintaining pace. [AR 919] As such, the ALJ concluded that "[b]ecause [Plaintiff's] mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied" and she did not meet or equal a listed mental impairment at step three under the PRT. [AR 919] Plaintiff does not dispute these determinations; rather, she contends that the ALJ failed to address how the mild and marked mental limitations found during the PRT impacted her RFC and her ability to work.

While the PRT ratings signify the degree of limitation a claimant suffers in four broad functional areas, the RFC assessment is of a claimant's functional limitations on their ability to work. Plaintiff concedes that an ALJ is not required to include the assessed mild or moderate PRT ratings in an RFC, but argues that an ALJ is required to specifically explain why such limitations do not impact the claimant's RFC when they are not included.  Plaintiff argues that an ALJ's failure to explain the omission of a limitation in the PRT, when assessing the claimant's RFC, amounts to legal error. I am not convinced, however, that the SSA regulations or the case law requires that an ALJ must specifically address (and, in turn, either incorporate or reject) his or her findings regarding a claimant's mental functioning in the PRT broad areas when assessing her limitations on her ability to work in her RFC.

The governing SSA regulations do not mandate that the ALJ specifically address the degree of functional limitations assessed at step two and three when subsequently formulating a claimant's RFC. Rather, the regulations require only that the ALJ must consider the limitations resulting from a claimant's severe and non-severe impairments when subsequently assessing an RFC. *See* 20 C.F.R. §404.1545(a)(2), §416.945(a)(2)(providing that the ALJ must "consider all of [a claimant's] medically determinable impairments . . . , including [the claimant's] medically determinable impairments that are not 'severe,' " when assessing the claimant's RFC); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (indicating that "[i]n assessing RFC, the adjudicator must consider limitations and

10

restrictions imposed by all of an individual's impairments, even those that are not 'severe.' "). In fact, Social Security Ruling 96-8p specifically cautions against any requirement that a PRT limitation equates to a corresponding RFC limitation. SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996) (indicating that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.") Likewise, the case law provides the same. *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) (concluding that "the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case"); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished) (ruling that "[t]he ALJ was under no obligation to include limitations in social functioning in [the plaintiff's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis"); *Ayat H. v. Kijakazi*, No. 2:22-CV-00267-DBP, 2022 WL 16744571, at *2 (D. Utah 2022) (unpublished) (ruling that the ALJ's paragraph B findings are not the same as the RFC and "mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps" of the sequential evaluation) (quoting *Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. 2013) (unpublished)).

To the extent that Plaintiff argues that the case law mandates that the ALJ either incorporate or *specifically reject* a claimant's limitations found during the

11

PRT when assessing their RFC, I likewise disagree. Plaintiff relies upon the ruling in *Wells v. Colvin,* 727 F.3d 1061, 1071 (10th Cir. 2013), in which the Tenth Circuit reversed and remanded the ALJ's ruling because it was concerned that the ALJ simply disregarded the plaintiff's mental impairments when assessing her RFC, after the ALJ had previously found that those impairments were not severe when applying the PRT ratings. The Tenth Circuit reiterated that the SSA regulations require that when an ALJ finds non-severe mental impairments at step two, the ALJ must still consider those impairments when assessing the claimant's RFC.  *Id.* (remanding based on the court's concern that the ALJ simply disregarded the plaintiff's non-severe mental impairments when assessing her RFC – due to the assessed PRT ratings – and further ruling, in any event, that remand was necessary because the ALJ's RFC finding was not supported by substantial evidence).

As to Plaintiff's reliance on a "plethora of additional cases" that support the proposition that an ALJ cannot ignore mental limitations found at an earlier step in the sequential evaluation process in assessing a claimant's RFC, my review of the case law reveals no consensus for such a rule. For example, in *Lydon v. Comm'r, Soc. Sec. Admin.*, No. 18-CV-01526-MSK, 2019 WL 3812379, at *4 (D. Colo. Aug. 14, 2019) (unpublished), the district court ruled that the ALJ's RFC assessment was insufficient to account for the mild impairments found at the PRT, when the ALJ's RFC determination was "silent as to any metal impairments whatsoever," and rejecting the Commissioner's argument that and RFC requirement of "unskilled" work was sufficient to account for any or all mental health impairments. In *Badar*

12

*v. Colvin*, No. 15-CV-0180-WJM, 2015 WL 6774210, at *5 (D. Colo. Nov. 6, 2015) (unpublished), the court remanded because it could not "determine, from the ALJ's decision, whether the ALJ's RFC accounted for Plaintiff's moderate limitations in concentration, persistence, and pace that the ALJ found in step three." In *DeFalco-Miller v. Colvin*, 520 F. App'x 741, 748 (10th Cir. 2013) (unpublished), the Tenth Circuit ruled that there is no requirement that step three findings concerning mental impairment listings be incorporated into the RFC determination, and the ALJ's statement at step three that the plaintiff exhibited "no more than" moderate difficulties maintaining social functioning, "is neither a medical fact nor nonmedical evidence [and the plaintiff] does not argue that the record evidence, rather than the ALJ's step three statement, compels the inclusion of a moderate social-functioning limitation in the RFC."; *see also Andrick v. Comm'r of Soc. Sec. Admin.*, 669 F. Supp. 3d 819, 823 (D. Ariz. 2023) (remanding because the ALJ did not discuss the mental limitations found a steps two and three, and instead merely suggesting that "if a paragraph B limitation doesn't appear in the RFC, it's because the ALJ found that it wouldn't restrict [the c]laimant's ability to work." ).

In this case, I find that the ALJ's RFC determination accounts for her mental limitations on her ability to work and is supported by substantial evidence in the record. When assessing the severity of Plaintiff's mental limitations pursuant to the PRT, the ALJ determined that Plaintiff was mildly (or slightly) limited in her ability to understand, remember or apply information; interact with others; and adapt or manage herself. [AR 919] In addition, he found she was moderately (or

13

fairly) limited in her ability to concentrate, persist, or maintain pace. [AR 919] Then, when assessing Plaintiff's RFC, the ALJ found that Plaintiff was "capable of performing work of limited complexity requiring accuracy and attention to detail. She can maintain concentration, persistence and pace for 2-hour segments during a normal workday with normal breaks in work that is of limited complexity requiring accuracy and attention to detail." [AR 920] The ALJ noted that his RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." [AR 920] Plaintiff concedes that the RFC addresses her mild limitation in her ability to understand, remember or apply information, but argues the ALJ did not address her mild limitations in her ability to interact with others, and to adapt or manage herself. [Doc # 15 pg. 3] Plaintiff also maintains that the ALJ did not address her moderate limitation in her ability to concentrate, persist, or maintain pace, when assessing her RFC, in that there is no discussion of her distraction or that she would require brief periods of reorientation after "an episode" of non-epileptic seizures. [AR 919][Doc #13 pg. 6 ]

     In making his RFC finding that Plaintiff's ability to work was restricted to jobs with limited complexity (that still required accuracy and attention to detail), and that she could only maintain concentration, persistence and pace for 2-hour segments during a normal workday (with normal breaks) doing that type of work, the ALJ relied on the following. First, the ALJ found the testimony of the independent medical expert, Dr. Michael Lace, Psy.D., to be "highly persuasive as . . . well supported by review and summary of the completed medical record, as well as

14

discussion of the specific findings of the various consultative examinations." [AR 921] The ALJ agreed with Dr. Lace that Plaintiff's depression and anxiety "would not create limitations in her ability to perform basic work activities beyond being precluded from fast-paced or production-rate work such as working on an assembly line where other workers were depending on her productivity" and that she "would be capable of performing complex tasks." [AR 921] The ALJ noted that although Dr. Lace's opinion that Plaintiff suffered no severe mental impairments was "not fully consistent with the totality of the medical evidence or the degree of deference given to slight abnormalities noted at the consultive examinations," the ALJ accepted Dr. Lace's "broad findings . . . to the extent they note that [Plaintiff] would not experience greater limitation beyond the sort described herein, namely being restricted to tasks of limited complexity that still required attention to detail and accuracy." [AR 921] The ALJ likewise found that while "the cumulative effect of all the claimant's impairments, including her mental impairments and her experience of seizures, would reasonably contribute to a moderate limitation in the area of concentration, persistence and maintain pace, Dr. Lace's testimony is otherwise persuasive to the extent it was limited to the psychological impairments within his area of training and expertise." [AR 921]

In addition, the ALJ noted that Plaintiff reported no significant limitations in social functioning and "[t]reatment records fail to support a need for limitations in social interactions" although Plaintiff indicated that she was more isolated because of "complaints of fatigue." [AR 931]

15

The ALJ also found persuasive the opinion of Gayle Frommelt, Ph.D., who reviewed the evidence on behalf of the state agency, and opined that Plaintiff could:

> perform tasks that did not involve more than limited complexity and attention to detail. Limitations of attendance and pace would not prevent the completion of a normal workday/workweek or significantly reduce pace. She could perform at a consistent pace without an unreasonable number and length of rest periods. [AR 931]

With regard to the opinion of Victor Neufeld, Ph.D., who performed a consultative psychological evaluation for the state agency, the ALJ agreed with his finding of no significant limitations in comprehending or recalling instructions, and noted that "the objective medical records support that [Plaintiff] would have no more than moderate limitations in tasks requiring attention, concentration, persistence and pace and such limitations are readily addressed by her limitation to work of limited complexity that requires accuracy and attention to detail." [AR 931]

And, finally, the ALJ noted that Brad Marten, Psy.D., who also performed a psychological consultative evaluation on behalf of the state agency, found that:

> while she had some difficulties maintaining pace on examination, the above-described residual functional capacity [RFC] accommodates these appropriately when finding that the claimant would be restricted to work of limited complexity requiring accuracy and attention to detail. Discussion of her ability to persist for periods of time longer than 4.5 hours in duration is unpersuasive and not adopted, as the undersigned finds that she would reasonably be able to complete a normal work schedule of two hours segments of productive activity with standard breaks, such as meal breaks and standard 15-minute breaks twice during an 8-hour workday. [AR 933]

The ALJ found, with regard to the limitations opined by Dr. Marten, that:

> It is only when giving broadest deference to these limited findings that the undersigned can find that she would have moderate limitation in this area; however, greater limitations are not warranted based on her otherwise

16

> normal performance on other tests of attention, concentration, persistence and pace.
>
> . . .
>
> Again, these vague and somewhat poorly described limitations have been given broadest possible interpretation and deference when finding that they contribute to the claimant being restricted to a set of 'limited complexity' tasks requiring accuracy and attention to detail. [AR 933]

The ALJ's order accurately indicates that the limitations identified in the PRT determination "are not an assessment of her RFC – but instead are use rate the severity of her mental impairments at steps two and three – as the mental RFC requires a more detailed assessment of her mental functioning in a workplace." [AR 920] Furthermore, the ALJ's comprehensive order clearly addresses Plaintiff's limitations on her ability to work that arise from her severe and non-severe mental impairments when assessing her RFC, and those determinations are supported by sufficient evidence in the record. As such, I find no legal error in the ALJ's RFC assessment of Plaintiff's mental limitations on her ability to work, and I find that the mental limitations in the RFC assessed were supported by substantial evidence of record.

## C. Limitations Assessed by Opinion Evidence

Finally, Plaintiff asserts that the ALJ erred by failing to adopt, or address and reject, two limitations assessed by medical source opinions (that the ALJ found persuasive) when formulating her RFC. The Commissioner argues, in response, that any error by the ALJ in failing to discuss or incorporate all the specific determinations made by the medical source opinions was harmless.

Plaintiff maintains that the ALJ's failure to include or discuss 1) Dr. Synder's assessment that she needs a cane in some circumstances, and 2) Dr. Marten's opinion she would require supervision, oversight, or a calculator to perform basic arithmetic, when assessing her RFC, constitutes reversable error. A review of the order reveals that the ALJ did not directly address these specific limitations, but that omitting them in Plaintiff's assessed RFC was consistent with the evidence of record and the ALJ's determinations.

The ALJ found the medical opinion provided by Dr. Aaron Snyder, M.D., a state agency reviewing physician, "persuasive to the extent that it is consistent with the above-described residual functional capacity [RFC] and the objective evidence of record." [AR 930] In so doing, the ALJ noted that Plaintiff's RFC included more restrictive postural limitations than those assessed by Dr. Snyder, and found that Dr. Snyder's opinion as to Plaintiff's ability to reach was not persuasive. [AR 930] The ALJ did not specifically address Dr. Snyder's opinion that Plaintiff required a cane for ambulation on uneven ground or for long distances [AR 144] which, Plaintiff contends, was supported by Dr. Syner's findings in the records of balance impairment and decreased stamina. [AR 147] However, as noted by the Commissioner, Plaintiff has not pointed to any medical evidence in the record that a cane has been prescribed or recommended and, in fact, she testified at her first evidentiary hearing on April 28, 2021, that she does not use an assistive device. [AR 68]

The ALJ likewise found the opinion of Brad Marten, Psy.D.,"generally

18

persuasive" as it was "reasonably well supported by the results of this examination and . . . consistent with her treatment records and objective findings upon examination." [AR 932] However, the ALJ specifically rejected Dr. Marten's assessment that Plaintiff was limited in her ability to persist and to respond to questions for only 4 and 1/2 hours in an 8-hour workday. [AR 932-33] Plaintiff correctly argues that the ALJ did not specifically address Dr. Marten's opinion that because Plaintiff displayed "low average basic arithmetic skills" on testing, she would require supervision, oversight, or a calculator in order to perform basic arithmetic calculations. [AR 734]

The ALJ's omission of Dr. Marten's opinion as to Plaintiff's limitations in performing basic calculations does not constitute error, however, when the ALJ did not accept the expert's opinion without reservation and there is sufficient evidence to support the omission of such limitation. Plaintiff self-reported that she maintained adequate basic arithmetic skills to balance her checkbook and pay bills, and was able to add and subtract, and although she could not multiply six by seven, she could divide thirty-five by five. [AR 732, 73, 918]

My review of the record confirms the presence of sufficient evidence to support the ALJ's omission of those limitations, arguably found by two medical source opinions that were not fully endorsed by the ALJ, when assessing Plaintiff's RFC. In so ruling, I reject Plaintiff's argument that I am re-weighing the evidence. *See Lax v. Astrue, supra*, 489 F.3d at 1084 (noting that a reviewing court cannot reweigh the evidence or substitute its judgment for the Commissioner's). I am not

19

modifying or altering the ALJ's findings of fact regarding Plaintiff's use of a cane, or her ability to perform math; rather, I am reviewing the evidence in support of the ALJ's omission of the potential RFC limitations.

ACCORDINGLY, for the foregoing reasons, I AFFIRM the final order of the SSA Commissioner denying Plaintiff's application for disability insurance benefits and supplemental security income.

Dated: July 2, 2024 in Denver, Colorado.

                                            BY THE COURT:

                                               s/Lewis T. Babcock_____
                                           LEWIS T. BABCOCK, JUDGE